# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **MILTON KEITH PERKINS,** | ) |
| **Plaintiff,** | ) |
| v. | ) No. 3:21-cv-00901 |
| | ) Judge Trauger |
| **DAMON HININGER,** *et al.*, | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

Milton Keith Perkins, #306588, an inmate of the Hardeman County Correctional Facility in Whiteville, Tennessee, has filed a pro se, in forma pauperis complaint under 42 U.S.C. § 1983 against Damon Hininger, Dr. f/n/u Hancock, and John Doe, M.D., alleging violations of the plaintiff's civil rights. (Doc. No. 1). The plaintiff seeks the appointment of counsel (Doc. No. 2) and a temporary restraining order and preliminary injunction. (Doc. No. 7).

The complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. Screening of the Complaint

### A. PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), a court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id*. § 1915A(a), and

1

summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id*. § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

A court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

2

### B. Section 1983 Standard

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

### C. Alleged Facts

The plaintiff previously was an inmate of the Texas Department of Criminal Justice Institutional Division during which time he was housed at the Jester III unit in Richmond, Texas. During that time, the plaintiff developed a suspicious spot on his face. He believes that he suffered from medical neglect that caused "irreversible damage and massive scaring to the left side of [his] face and head, and has caused the loss of facial movements, and the loss of eye movements that affect [his] peripheral vision." (Doc. No. 1 at 4). The plaintiff has filed a lawsuit concerning his medical care, or lack thereof, in Texas. *See Milton Keith Perkins v. Senior Warden Townsend, et al.*, No. 4:21-cv-03962 (S.D. Tex. Filed 12/2/2021). That case remains pending.

The plaintiff was extradited to Nashville, Tennessee, on May 4, 2020, and was housed at the "Metropolitan Davidson county jail"[1] for approximately four months. (Doc. No. 1 at 7). During that time, the tumor on the plaintiff's face was approximately 5 to 6 centimeters long and growing at a rapid pace. Upon his arrival, an unidentified doctor examined the plaintiff and

---

[1] It is unclear, but it appears this facility is not the same facility to which the plaintiff later refers as the "Metro Davidson County detention facility (operated by Core Civic a private company) out on Harding Place in east Nashville." (Doc. No. 1 at 8). The plaintiff also refers to this facility as the "Metropolitan Davidson county downtown detention facility" and differentiates it from the facility ran by "Core Civic on Harding Place." (*Id.*)

3

prescribed pain medication for him. The doctor planned to send the plaintiff to Meharry Medical Center but that did not occur because "CoreCivic was in the middle of transitioning the facility back over to Metro." (Doc. No. 1 at 16).

The plaintiff then was transferred to "the detention facility on Harding Place."[2] (*Id*. at 8). The plaintiff immediately was placed in quarantine due to COVID and the plaintiff's health problems, including Hepatitis C. The quarantine cell to which the plaintiff was assigned was located beside the infirmary, and the plaintiff was seen by nurses daily who changed his bandages. CoreCivic did not have an onsite doctor available. Within two weeks the plaintiff received a telehealth visit from Dr. John Doe who scheduled an appointment for the plaintiff at Meharry Medical Center for May 18, 2020. At that appointment, Dr. Muyiwa Adedokun, a surgeon, examined the plaintiff and diagnosed the tumor as malignant. However, Dr. Adedokun explained that he could not remove the tumor on that date because there was no plastic surgeon present.

On May 29, 2020, the plaintiff was taken to Vanderbilt University Medical Center for an appointment with plastic surgeon Dr. Salam Haleen Alkassis who, upon seeing the tumor, told the plaintiff that he had been sent to the wrong doctor.

On June 5, 2020, the plaintiff was taken to the emergency room due to loss of sight in his left eye. Doctors determined that the tumor was draining into the plaintiff's eye and causing an infection. The plaintiff was returned to prison without removal of the tumor. Nurses refused to change the plaintiff's bandages. (*Id*. at 11).

On June 22, 2020, the plaintiff was taken to an appointment with oncologist surgeon Dr. Rondi Marie Kauffmann at Vanderbilt University Medical Center. Dr. Kauffmann diagnosed the plaintiff with squamous cell carcinoma cancer. Dr. Kauffmann performed surgery on the plaintiff

---

[2] As best the court can discern, this facility is the Metro-Davidson County Detention Facility located at 5115 Harding Place, Nashville, Tennessee. The plaintiff alleges that this facility is run by CoreCivic. (Doc. No. 1 at 8).

4

on July 7, 2020. By that time, the tumor had grown to 9 to 10 centimeters. The surgery took four hours to complete. On July 17, 2020, Dr. Alkassis completed the needed post-operation plastic surgery work, including a skin graft, due to the size of the tumor.

On July 22, 2020, the plaintiff was returned to Dr. Kauffmann, who issued a report and assessment plan that recommended the plaintiff undergo a left neck nodal basin ultrasound every three months and CT in six months. In addition, Dr. Kauffmann wanted to see the plaintiff every three months for a skin and lymph node examination over a two-year period.

The plaintiff since has been transferred to the Hardeman County Correctional Facility. The date of his transfer is unclear from the complaint: it appears to have been September 29, 2020, or October 29, 2020. (*Id.* at 16). The plaintiff has been taken to one follow-up appointment with Dr. Kauffmann, a visit he received due to help from his brother. The plaintiff continues to suffer from "massive headaches" and "severe dizziness." (*Id.* at 13).

D.  Analysis

The complaint alleges that the defendants failed to provide the plaintiff with appropriate and timely medical care for his malignant facial tumor. The plaintiff names as defendants Damon Hininger, the President of CoreCivic; Dr. f/n/u Hancock, who the plaintiff identifies as a CoreCivic physician; and Dr. John Doe, who the plaintiff identifies as a CoreCivic telehealth physician. Each defendant is sued in both his or her individual and official capacity.

The Eighth Amendment to the United States Constitution requires that inmates be provided with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. *See Grubbs v. Bradley*, 552 F. Supp. 1052, 1119-24 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. *See Bellamy v. Bradley*, 729 F.2d 416, 419 (6th Cir. 1984). The United States Supreme Court has held

that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994).

A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." *Id*. (quoting *Farmer*, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id*.

### 1. Claims Arising Before November 24, 2020

Because Section 1983 does not contain its own limitations periods, courts apply the law of the state "where the cause of action originated." *Hall v. Spencer Cty*., 583 F.3d 930, 933 (6th Cir. 2009) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). Under Tennessee law, the applicable limitations period is one year for civil actions brought under federal civil rights statutes. *Johnson v. Memphis Light Gas & Water Div*., 777 F.3d 838, 843 (6th Cir. 2015); *see also Tenn. Code Ann*. § 28-3-104(a)(1)(B) (2017). However, the accrual date for a Section 1983 claim is governed by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Cox v. City of Jackson, Tenn*., 811 F. App'x 284, 288 (6th Cir. 2020). As a result, a Section 1983 claim "does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, both his injury and the responsible party." *Hall*, 583 F.3d at 933 (citation omitted); *see also Johnson*, 777 F.3d at 843. This objective inquiry asks "what event should have alerted the typical lay person to

6

Case 3:21-cv-00901   Document 9   Filed 03/28/22   Page 6 of 20 PageID #: 305

that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994).

A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." *Id*. (quoting *Farmer*, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id*.

### 1. Claims Arising Before November 24, 2020

Because Section 1983 does not contain its own limitations periods, courts apply the law of the state "where the cause of action originated." *Hall v. Spencer Cty*., 583 F.3d 930, 933 (6th Cir. 2009) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). Under Tennessee law, the applicable limitations period is one year for civil actions brought under federal civil rights statutes. *Johnson v. Memphis Light Gas & Water Div*., 777 F.3d 838, 843 (6th Cir. 2015); *see also Tenn. Code Ann*. § 28-3-104(a)(1)(B) (2017). However, the accrual date for a Section 1983 claim is governed by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Cox v. City of Jackson, Tenn*., 811 F. App'x 284, 288 (6th Cir. 2020). As a result, a Section 1983 claim "does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, both his injury and the responsible party." *Hall*, 583 F.3d at 933 (citation omitted); *see also Johnson*, 777 F.3d at 843. This objective inquiry asks "what event should have alerted the typical lay person to

protect his or her rights." *Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005) (citation omitted); *see also Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000).

Here, the court finds that the plaintiff discovered, or in the exercise of due diligence could have discovered, his injury and the responsible parties after Dr. Muyiwa Adedokun diagnosed the plaintiff's tumor as malignant on May 18, 2020, and the defendants did not arrange immediate removal of the tumor. The complaint acknowledges that the plaintiff knew of his injury and the responsible parties at the time he pursued grievances about medical treatment for the tumor beginning in May 2020 (*see* Doc. No. 1, Attach. 4 at 38) and wrote to the Magna Law Firm seeking legal assistance with the matter in early May 2020 (*see id*. at 40). The court therefore finds that the plaintiff's Section 1983 claims accrued no later than the end of May 2020, and the plaintiff's one-year statute of limitations for filing a Section 1983 claim expired, at the latest, on June 1, 2020. The plaintiff filed his complaint on November 24, 2021.[3] (Doc. No. 1 at 14). Therefore, any Section 1983 claims alleged in the instant complaint that accrued before November 24, 2020 for actions occurring in Tennessee are barred by the statute of limitations.

In a letter to an attorney dated October 6, 2021, the plaintiff stated that he was "truly concerned about the statute of limitations" in Tennessee because he only recently learned the statute of limitations for his claims was one year. (*Id*. at 46). He further stated: "I had my surgery on July 7, 2020 and that was when I was told by a doctor that day that I suffered from a serious case of medical neglect, that the form of cancer I had was commonly removed from patients daily with little to no scarring. I would think the statute of limitations would begin on that day." (*Id*.) He

---

[3] Under the "prison mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 270 (1988), and the Sixth Circuit's subsequent extension of that rule in *Richard v. Ray*, 290 F.3d 810, 812 (6th Cir. 2002) and *Scott v. Evans*, 116 F. App'x 699, 701 (6th Cir. 2004), a prisoner's legal mail is considered "filed" when he deposits his mail in the prison mail system to be forwarded to the Clerk of Court. Pursuant to this authority, the Court finds that the plaintiff filed his petition on November 24, 2021, the date he signed the complaint (Doc. No. 1 at 14), even though the Clerk of Court received and docketed the complaint on December 3, 2021.

7

continued: "I believe the statute of limitations could be overcome due to Covid19 and the fact that I have been in just about constant quarantine since I arrived in Tennessee that total about 15-months." (*Id*.) Even if the plaintiff's accrual date was July 7, 2020, as he alleges, he filed this lawsuit on November 24, 2021, which again would have been several months beyond the applicable one-year statute of limitation.

Although the complaint does not explicitly acknowledge that the plaintiff's claims are barred by the statute of limitations, in an affidavit filed in support of his complaint the plaintiff asks the court "to take into consideration the totality of this affidavit, the fact the jails and prison systems have been under siege, and basically paralyzed due to the global pandemic for more than a year now. Plaintiff has never attempted to file a lawsuit and is merely a layman of the law." (Doc. No. 1 at 16). The plaintiff continues: "Even for a seasoned attorney a lawsuit of this magnitude, and this complex, would struggle under a one year statute of limitation and the plaintiff ask[s] this court to allow him grace . . . ." (*Id*.) Thus, the plaintiff appears to be asking the court to equitably toll the applicable statute of limitations for his Section 1983 claims that would otherwise be barred as untimely.

But the Tennessee Supreme Court has "consistently declined to recognize the doctrine of equitable tolling in civil proceedings." *Whitehead v. State*, 402 S.W.3d 615, 626 (2013). *See Clark v. Clawson*, No. 3:20-cv-00230, 2021 WL 568017, at *3 (M.D. Tenn. Feb. 16, 2021) (Crenshaw, C.J.) (adopting report and recommendation recommending that Clark's claims are barred by the applicable one-year statute of limitations for Section 1983 claims). Instead, under Tennessee law, courts may only toll statutes of limitations in civil cases based on "the doctrines of equitable estoppel and fraudulent concealment . . . ." *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012). "[T]he doctrine of equitable estoppel tolls the running of the statute

of limitations when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period." *Id*. "Under the fraudulent concealment doctrine, the statute of limitations is tolled when 'the defendant has taken steps to prevent the plaintiff from discovering he [or she] was injured.'" *Id*. at 462 (alteration in original) (quoting *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 146 (Tenn. 2001)). "Tennessee law governs '[n]ot only the length of the limitations period, but also closely related questions of tolling and application.'" *Markowitz v. Harper*, 197 F. App'x 387, 389 (6th Cir. 2006).

The plaintiff here has not argued that the defendants engaged in the kind of deceptive behavior necessary to toll the limitations period under the doctrines of equitable estoppel or fraudulent concealment, and the court finds that neither doctrine is applicable here. Thus, there is no factual or legal basis to justify tolling the statute of limitations for the plaintiff's Section 1983 claims based on any defendant's actions that occurred prior to November 24, 2020. As a result, binding Sixth Circuit precedent requires the court to dismiss those claims as untimely, even if they were filed only one day late. *See Merriweather*, 107 F.3d at 400 (affirming dismissal of complaint as time-barred because the complaint "was filed one day late"); *see also In re Royal Manor Mgmt., Inc.*, 652 F. App'x 330, 339-40 (6th Cir. 2016) (noting that "courts have no authority" to modify "statute-of-limitations deadlines"). The plaintiff's claims were filed over five months too late.

The court notes one additional consideration. Due to the COVID-19 pandemic, the Tennessee Supreme Court extended the deadline to file claims that would have become time-barred between March 13, 2020, and May 31, 2020, to June 5, 2020. "Order Modifying Suspension of In-Person Court Proceedings and Further Extension of Deadlines," No. ADM2020-0428 (Tenn. April 24, 2020); "Order Extending State of Emergency and Easing Suspension of In-Person Court Proceedings," No. ADM2020-00428 (Tenn. May 26, 2020); *see Duventre v. Home Depot U.S.A.,*

*Inc.*, No. 2:20-cv-2905-SHM, 2021 WL 3745322, at *3 (W.D. Tenn. Aug. 24, 2021). Some of the plaintiff's claims would have become time-barred during this time period. However, the plaintiff filed this lawsuit after June 5, 2020; thus, the extended deadline does not save his time-barred claims.

### 2. Claims Arising After November 24, 2020

The court now moves to the plaintiff's Section 1983 claims based on actions taken by a defendant in Tennessee <u>after</u> November 24, 2020.

#### a. Individual Capacity Claims

Other than being listed as a defendant, Damon Hininger is not mentioned in the narrative of the complaint or anywhere else in the complaint. A plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation. *See, e.g., Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted); *Miller v. Calhoun Cnty.*, 408 F.3d 803, 827 n.3 (6th Cir. 2005) (same). Because the plaintiff does not allege the personal involvement of Damon Hininger in the events set forth in the complaint, the plaintiff has not established a basis for imposing individual liability on this defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).

To the extent that the plaintiff seeks to hold Damon Hininger liable solely because he is the President and Chief Executive Officer of CoreCivic, Mr. Hininger does not bear legal responsibility simply because of those roles. There is no respondeat superior liability under Section 1983. *See Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (holding plaintiff must allege "a policy or well-settled custom of the [entity] was the 'moving force' behind the

10

alleged deprivation" of his rights). Thus, the plaintiff's claims against Damon Hininger in his individual capacity must be dismissed.

As to Dr. f/n/u Hancock, who the plaintiff identifies as a CoreCivic physician, the complaint does not mention him other than naming him as a defendant. Because the complaint fails to allege that Dr. f/n/u Hancock was "personally involved in the alleged deprivation of federal rights," *Frazier*, 41 F. App'x 762 at 764, the complaint fails to state a Section 1983 claim against Dr. f/n/u Hancock in his individual capacity. The claim will be dismissed.

Finally, the complaint names Dr. John Doe as a defendant. According to the complaint, CoreCivic did not provide an onsite physician at the Metro-Davidson County Detention Facility when the plaintiff first arrived, and Dr. Doe is the CoreCivic telehealth physician who arranged for the plaintiff to be examined by several outside doctors after his transfer to the Metro-Davidson County Detention Facility. (Doc. No 1 at 9). The complaint chronicles several scheduling and logistics problems with those outside physician appointments and alleges that "[a]ll the while during the wasted trips the tumor was growing exponentially every day and the pain had become unbearable. Plaintiff had already been seen and examined by multiple doctors, plaintiff was getting bandage changes daily, sometimes twice a day by the nurses, while the tumor grew right before their eyes and plaintiff was absolutely at their mercy, totally helpless and by then, hopeless." (Doc. No. 1 at 10).

While the complaint acknowledges that the plaintiff received medical care in Tennessee from November 24, 2020 to December 28, 2020,[4] including surgery removing his cancerous tumor, the plaintiff is not satisfied with the speed or quality of the care he received. However, complaints of malpractice or allegations of negligence are insufficient to entitle plaintiff to relief.

---

[4] The complaint alleges that Dr. Kauffmann examined the plaintiff on December 28, 2020. (Doc. No. 1 at 13).

*Estelle*, 429 U.S. at 105-06. A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Id*. at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Thus, the complaint fails to state a Section 1983 claim upon which relief can granted against Dr. John Doe in his individual capacity for any medical treatment provided beginning on November 24, 2020 and ending on December 28, 2020.

The complaint further alleges that the plaintiff has not received the post-surgical care and follow-up visits ordered by the surgeon. These allegations are distinguishable from the plaintiff's prior allegations because the plaintiff contends that he has received <u>no treatment at all</u> after December 28, 2020, and that he "continues to suffer from massive headaches and severe dizziness and can't get the medical department to help." (Doc. No. 1 at 13). The court finds that the plaintiff's medical conditions as described are sufficiently serious. *See Rouster,* 749 F.3d 437, 446. But the complaint fails to allege who is responsible for the plaintiff's predicament. Nor does the complaint allege that any particular individual has acted or continues to act with deliberate indifference to the plaintiff's serious medical needs.[5] *See Rouster,* 749 F.3d 437, 446. Nevertheless, the plaintiff's medical condition as described is concerning, and the court recognizes that the plaintiff is

---

[5] In the plaintiff's motion for a temporary restraining order, the plaintiff alleges that nurse practitioner O. Herring "would not see plaintiff regarding the potential that the cancer was coming back and . . . wouldn't send plaintiff to his scheduled appointments as ordered by Dr. Kauffmann." (Doc. No. 7 at 4).

12

proceeding pro se. If more fully developed, the plaintiff's allegations could state colorable deliberate indifference claims under Section 1983 against the as-yet unidentified individuals responsible for the alleged lack of any surgical follow-up and cancer monitoring for the plaintiff after the removal of his malignant facial tumor. The court finds that it is appropriate to permit the plaintiff to amend his complaint, if he so desires, to name those individuals as defendants to this action in their individual capacities.

### b. Official Capacity Claims

The plaintiff's official capacity claims against Hininger, Hancock, and Doe, all alleged to be CoreCivic employees, are essentially claims against CoreCivic itself. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Ky. v. Graham*, 473 U.S. 159, 165 (1985)) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."). CoreCivic is a private corrections management firm that operates various penal facilities across the country. Because it performs a traditional state function in operating a state prison, Core Civic acts under the color of state law. *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996). To state a claim against CoreCivic, the plaintiff must allege that his "'constitutional rights were violated and that a policy or custom' of [CoreCivic] 'was the moving force behind the deprivation of [his] rights.'" *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)).

Here, the complaint makes no such allegation regarding a "policy or custom" of CoreCivic. Thus, the complaint fails to state a claim against CoreCivic, and the plaintiff's official-capacity claims against Hininger, Hancock, and Doe will be dismissed.

13

Case 3:21-cv-00901   Document 9   Filed 03/28/22   Page 13 of 20 PageID #: 312

E.   **Conclusion**

For the reasons explained herein, the plaintiff's Section 1983 claims against all named defendants in this lawsuit[6] based on actions occurring in Tennessee prior to November 24, 2020 will be dismissed as time-barred.  Further, the plaintiff's Section 1983 claims against defendants Hininger, Hancock, and Doe for the time period of November 24, 2020 to December 28, 2020 will be dismissed for failure to state claims upon which relief can be granted. Finally, the plaintiff's official capacity claims against all defendants will be dismissed for failure to state Section 1983 claims upon which relief can be granted. This action, therefore, is subject to dismissal.

However, considering (1) the plaintiff's pro se status; (2) the concerning allegations regarding his current medical condition; and (3) the allegations that could be viewed as stating colorable deliberate indifference claims under Section 1983 against the as-yet unidentified individuals responsible for the alleged lack of any surgical follow-up and cancer monitoring for the plaintiff after December 28, 2020 to the present, the court finds that it is appropriate to permit the plaintiff to amend his complaint, if he so desires, to name those individuals as defendants to this action in their individual capacities.

If the plaintiff submits a timely amended complaint, the court will screen the amended complaint as required by the PLRA. If the plaintiff fails to submit an amended complaint by the deadline set forth by the court, this action will be dismissed.

II.   **Request for the Appointment of Counsel**

The plaintiff requests the appointment of counsel. (Doc. No. 2). He states that he has made a reasonable effort to retain an attorney but none would take his case. (*Id*. at 1). The plaintiff

---

[6] This memorandum opinion and accompanying order do not address the Section 1983 and other federal claims brought by the plaintiff against other defendants in the plaintiff's Texas lawsuit, nor does this court address any state law claims brought by the plaintiff in Texas or Tennessee concerning these events.

references "Exhibit F" in support of his motion but there were no exhibits filed with the plaintiff's motion.

The Supreme Court has held that "an indigent's right to appointed counsel exists only where the litigant may lose his physical liberty if he loses the litigation." *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 25 (1981). Thus, unlike criminal proceedings, there is no constitutional right to an appointed counsel in a civil action, such as this action. *Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977), *aff'd*, 595 F.2d 1227 (6th Cir. 1979); *see Williamson v. Autorama, Inc.*, No. 91-5759, 947 F.2d 947 (6th Cir. 1991) (citing *Willett* favorably). The appointment of counsel for a civil litigant is a matter within the discretion of the district court and will occur only under exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993).

The plaintiff has filed a complaint, an application to proceed in forma pauperis and supporting documents, a motion seeking counsel, and a motion for a temporary restraining order and supporting memorandum. The court finds that the plaintiff is effectively representing his own interests to date. *See, e.g., Flores v. Holloway*, No. 3:17-cv-00246, 2017 WL 2812908 at *2 (M.D. Tenn. June 29, 2017) (denying motion for the appointment of counsel when petitioner submitted a "lengthy petition" demonstrating his ability to litigate his case). Accordingly, the court finds that the interests of justice do not require the appointment of counsel at this time. The plaintiff's request for the appointment of counsel (Doc. No. 2) therefore will be denied without prejudice. The plaintiff may renew this motion at a later time if the circumstances warrant.

### III. Motion for a Temporary Restraining Order and Preliminary Injunction

Subsequent to filing his complaint, the plaintiff filed a motion for a temporary restraining order (TRO) and preliminary injunction against the named defendants, "their successors in office, agents, and employees and all other persons acting in concern [sic] and participation with them."

(Doc. No. 7). The plaintiff seeks "a medically appropriate course of treatment for follow-up appointment with oncologist surgeon Dr. Rondi Marie Kauffmann at Vanderbilt University Medical Center (VUMC), left neck nodal basin ultrasound, CT c/a/p, [and an] appointment with qualified dermatologist." (*Id*. at 1).

Federal Rule of Civil Procedure 65 governs the court's power to grant injunctive relief, including TROs without notice. Fed. R. Civ. P. 65(b). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." *Stenberg v. Checker Oil Co.,* 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted). "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Ciavone v. McKee*, No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). Further, where "a preliminary injunction is mandatory— that is, where its terms would alter, rather than preserve, the status quo by commanding some positive action . . . the requested relief should be denied unless the facts and law clearly favor the moving party." *Glauser-Nagy v. Med. Mut. of Ohio*, 987 F. Supp. 1002, 1011 (N.D. Ohio 1997).

In determining whether to issue a TRO or preliminary injunction under Federal Rule of Civil Procedure 65, a district court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without

the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *See, e.g., Liberty Coins, LLC v. Goodman,* 748 F.3d 682, 689-90 (6th Cir. 2014); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (noting that the same four factors apply regardless of whether the injunctive relief sought is a TRO or a preliminary injunction). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotations omitted).

Before reaching the merits, however, a movant must comply with specific procedural requirements. First, because the movant bears the burden of justifying preliminary injunctive relief on the merits, *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law. M.D. Tenn. L.R. 65.01(b). Second, a TRO motion must be supported, at a minimum, by "an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A); M.D. Tenn. L.R. 65.01(b) (explaining that a TRO motion "must be accompanied by a separately filed affidavit or verified written complaint"). Third, a TRO movant must certify in writing "any efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). This court mandates "strict compliance" with this notice provision by pro se parties. M.D. Tenn. L.R. 65.01(c).

The plaintiff has satisfied two of the three procedural requirements. He submitted a separate memorandum of law (Doc. No. 8) and supported his TRO motion with a verified complaint (Doc. No. 1 at 14). However, the plaintiff has not explained in writing what particular efforts he made to give notice of the TRO motion to any defendant or why notice should not be required. Because "strict compliance" with Rule 65's notice requirements is required, this failure

17

is fatal to the plaintiff's TRO motion. Even if the court were to reach the merits, however, the plaintiff has not demonstrated that he is entitled to emergency injunctive relief at this time.

First, under controlling Sixth Circuit authority, the plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his action. *Liberty Coins,* 784 F.3d at 689-90. At this point, the plaintiff's likelihood of success on his claims is no greater than the defendants' because the court has found that the complaint as submitted fails to state claims upon which relief can be granted under Section 1983, the only statute under which the plaintiff seeks relief. While the court is permitting the plaintiff to amend his complaint to more fully develop his Section 1983 claim alleging deliberate indifference to the plaintiff's serious medical needs beginning on December 28, 2020 to the present, at this time the plaintiff's allegations fail to state a colorable claim because the complaint does not identify the individuals responsible for denying post-surgical care to the plaintiff and does not allege that any individual acted with deliberate indifference to the plaintiff's serious medical needs.

With regard to the second factor of irreparable harm, the plaintiff alleges that he is experiencing a high level of pain, severe headaches, the partial loss of eyelid and eyebrow movement, and the loss of vision in his right eye due to the defendants' failure to provide him with post-surgical treatment and monitoring. (Doc. No. 7 at 3). While the plaintiff has submitted a sick call request he made on November 29, 2021 to support his allegations, he has not submitted any defendant's response to the request. At this time, the record does not contain the plaintiff's relevant medical records, responses to sick call requests, and other supporting documentation for his allegation that the defendants refuse to provide him with post-surgical treatment. *See McNutt v. Centurion Medical*, No. 2:17-CV-212, 2018 WL 735227, at *6 (E.D. Tenn. Feb. 5, 2018) (finding

18

that, with respect to the second factor to consider in granting a TRO, the prisoner-plaintiff had failed "to present any admissible evidence from a medical professional illustrating that he is receiving inadequate medical care or that he needs surgery.").

Third, a temporary restraining order in this situation could cause substantial harm to others because it would remove from prison officials the deference that they are generally afforded in the administration and control of the prison. *See McNutt*, 2018 WL 735227, at *6; *Eads v. Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *16 (M.D. Tenn. Sept. 7, 2018) ("Moreover, in considering the harm that issuance of a TRO would have on others, the Court must tread carefully in recognition that the state prison setting is unique . . . ."). "Decisions concerning the administration of prisons are vested in prison officials in the absence of a constitutional violation, and any interference by the federal courts in that activity is necessarily disruptive." *McNutt*, 2018 WL 735227, at *6 (citing *Griffin v. Berghuis*, 563 F. App'x 411, 417-18 (6th Cir. 2014)). CoreCivic has an interest in "promulgating and enforcing prison regulations, including reasonable rules involving prisoner health care . . . ." *Robbins v. Payne*, No. 11-15140, 2012 WL 3584235, at *3 (E.D. Mich. July 9, 2012) (denying plaintiff's motion for preliminary injunctive relief), *adopted by* 2012 WL 3587631 (E.D. Mich. Aug. 20, 2012). Additionally, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438 n.3 (6th Cir. 1984).

Finally, the court does not find that the public interest would be particularly impacted by the issuance or non-issuance of the requested TRO. "[W]hile there is a public interest served by upholding the civil rights of all individuals, there is also strong public interest in leaving the administrative matters of state prisons in the hands of jail officials." *McCord v. Maggio*, 910 F.2d

19

1248, 1250 (1990) (holding prisoner housing is a matter squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances).

For these reasons, the plaintiff has not carried his burden for issuance of emergency injunctive relief. Therefore, the plaintiff's motion (Doc. No. 7) will be denied. However, the denial is without prejudice to renew, if appropriate and supported by the required documentation.

### IV.     Summary

The court has conducted the screening required by the PLRA and determined that this action is subject to dismissal. However, the court finds that it is appropriate to permit the plaintiff to amend his complaint, if he so desires, to more fully develop his Section 1983 claims alleging deliberate indifference to the plaintiff's serious medical needs by as-yet identified defendants in Tennessee beginning on December 28, 2020 to the present. If the plaintiff submits a timely amended complaint, the court will screen the amended complaint as required by the PLRA. If the plaintiff fails to submit an amended complaint by the deadline set forth by the court, this action will be dismissed.

The plaintiff's request for the appointment of counsel (Doc. No. 2) will be denied without prejudice. Likewise, the plaintiff's motion for a TRO and preliminary injunction (Doc. No. 7) will be denied without prejudice.

An appropriate order will be entered.

_____
Aleta A. Trauger
United States District Judge