**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MILTON KEITH PERKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00901** |
| | ) | **Judge Aleta A. Trauger** |
| **DAMON HININGER et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Having now denied the plaintiff's Motion for Leave to File Supplemental Pleading (Doc. No. 63), the court turns its attention to three pending dismissal motions filed by the defendants: (1) the Partial Motion to Dismiss the Second Amended Complaint, filed by CoreCivic, Inc. ("CoreCivic") and Ollie Herron (Doc. No. 51); (2) the Motion to Dismiss filed by Lisa Helton, then Interim Commissioner of the Tennessee Department of Correction ("TDOC") (Doc. No. 53);[1] and (3) the Motion to Dismiss filed by Centurion of Tennessee, LLC ("Centurion") (Doc. No. 70). The court directed the plaintiff, through appointed counsel, to file any response to the three pending motions no later than July 17, 2023. (Doc. No. 88.) The plaintiff has now filed a Response in Opposition to the Commissioner's Motion to Dismiss (Doc. No. 89) but has not responded to the other motions.

For the reasons set forth herein, all three motions will be granted.

---

[1] The court takes judicial notice that Frank Strada was appointed Commissioner effective January 9, 2023. *See* https://www.tn.gov/correction/about-us/commissioner-frank-strada.html. Pursuant to Federal Rule of Civil Procedure 25(d), because the Commissioner is named in his or her official capacity, Strada is automatically substituted as a defendant in this case.

# I.     STANDARD OF REVIEW

In deciding a motion under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

At the same time, however, it has long been the rule that a court may consider not only the complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted). A court may also consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (citation omitted). Generally, "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013).

## II.     BACKGROUND

Plaintiff Milton Keith Perkins, an inmate in TDOC custody, originally filed this lawsuit on November 24, 2021. (*See* Doc. No. 1, at 14; Doc. No. 9, at 7 n.3 (applying prison mailbox rule).) The original Complaint asserted claims under 42 U.S.C. § 1983 against CoreCivic, Damon Hininger, in his capacity as President and Chief Executive Officer of CoreCivic, Dr. [f/n/u] Hancock, and John Doe, M.D., based on alleged violations of the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Generally, the plaintiff alleged that prison officials and prison medical personnel were deliberately indifferent to his serious medical needs, insofar as they delayed the diagnosis and treatment of what turned out to be a cancerous tumor on his face and then delayed or failed to provide necessary follow-up treatment once the tumor was removed.

Because the plaintiff is a prisoner and proceeds *in forma pauperis*, the court conducted an initial review of the original Complaint and dismissed all claims that accrued before November 24, 2020 as barred by the applicable one-year statute of limitations; dismissed the claims against the named defendants, in their individual capacity, that accrued between November 24, 2020 and

December 28, 2020 for failure to state a claim for which relief could be granted; and dismissed all official-capacity claims against all defendants for failure to state a claim for which relief could be granted. (*See* Doc. No. 9, at 14.) The court also denied the plaintiff's request for a temporary restraining order and preliminary injunction. At the same time, however, the court left the case open and granted the plaintiff leave to amend his pleading to "more fully develop his Section 1983 claims alleging deliberate indifference to the plaintiff's serious medical needs by as-yet [un]identified defendants in Tennessee beginning on December 28, 2020 to the present." (*Id.* at 20.)

The plaintiff thereafter filed his first Amended Complaint ("FAC"), naming as defendants Nurse Practitioner Ollie Herron, Corizon Health, Inc. ("Corizon"),[2] TDOC Interim Commissioner Lisa Helton, in both her official and individual capacity, and CoreCivic. (Doc. No. 12.) In this pleading, the plaintiff realleged the facts asserted in the original Complaint but also added facts pertaining to the treatment of his cancer and related problems with his eyes dating from December 28, 2020 through March 30, 2022, when he was transferred from Hardeman County Correction Facility ("HCCF") to Riverbend Maximum Security Institute ("RMSI"). (*See* Doc. No. 12.) The court conducted an initial review of the FAC and found that it stated colorable claims under § 1983 against Herron in her individual capacity; against CoreCivic (which operates HCCF) and Corizon (which was alleged to be the contractor that provides medical care for inmates in TDOC custody), based on a purported policy of prohibiting treatment of more than one ailment per sick call request, per day, by any inmate, without exception; and against the Commissioner in her official capacity based on the same alleged policy. With respect to the latter, the court explicitly noted that suit against the TDOC Commissioner in her official capacity is the same as suit against the State of

---

[2] The FAC identified this defendant as "Corizan, LLC" (in the case caption) and "Corizon, LLC" (in the body of the pleading). Corizon, through counsel, filed an Answer to the FAC on August 3, 2022, stating that its correct name is Corizon Health, Inc. (Doc. No. 26 ¶ 5.)

Tennessee and that the Commissioner is immune from suit *except* insofar as the plaintiff sought prospective injunctive relief for an ongoing violation of federal law, in connection with the alleged policy. The court also found that the FAC asserted state law claims over which the court has supplemental jurisdiction and allowed those claims to proceed as well, without examining them closely. All other claims were dismissed, specifically including the claim against the Interim Commissioner in her individual capacity. (Doc. No. 13; *see also* Order, Doc. No. 14.)

After the filing of the FAC, all of the then-remaining defendants (Herron, the Commissioner in his or her official capacity, Corizon, and CoreCivic) filed motions to dismiss, in whole or in part, the claims asserted therein. (Doc. Nos. 34, 38, 42.) In Response, the plaintiff sought and was granted leave to file the Second Amended Complaint ("SAC"). (Doc. No. 50.) The filing of the SAC prompted the denial without prejudice of the then-pending motions addressed to the FAC and the filing of a second round of motions to dismiss, in whole or in part, the claims set forth in the SAC. (*See* Doc. Nos.49, 51, 53, 70.) In this iteration of his pleading, the plaintiff states that he was told by a nurse that Corizon was "no longer the healthcare provider for the Tennessee Department of Correction" and that, instead, Centurion has "contracted with the State of Tennessee" to provide healthcare services for TDOC. (Doc. No. 50 ¶¶ 2–3, 14.) He omits Corizon as a defendant and adds Centurion in its place.[3] The plaintiff continues to assert claims under federal and state law based on the medical care (or lack thereof) he received at HCCF through March 2022. (Doc. No. 50 ¶¶ 17–54.) The pending motions are addressed to this pleading.

---

[3] In Corizon's Answer to the FAC, it admitted that it "was" contracted by the State of Tennessee to provide healthcare services for TDOC. (Doc. No. 26 ¶ 5.) Its Motion for Partial Dismissal of the FAC did assert as grounds for dismissal the fact that it was not contracted with the State of Tennessee to provide medical services to inmates during the relevant time frame. (*See* Doc. No. 43.) The Commissioner's Motion to Dismiss the FAC was premised, in part, on allegations that the State's contract with Corizon expired in 2013 and that the State had never contracted with Corizon to provide medical services at HCCF. (*See* Doc. No. 39.)

Shortly after filing the SAC, the plaintiff filed a Motion to Supplement Amended Complaint, seeking to add new allegations about certain RMSI correctional officers' deliberate refusal to transport him on time to a surgical appointment on October 24, 2022, thus causing the plaintiff's surgery to save the vision in his right eye to be unnecessarily delayed, and to add those correctional officers as new defendants. (*See* Doc. No. 63 and attachments thereto.) The court has now denied the Motion to Supplement under Rule 15(d). (Doc. No. 86.) Following the denial of the Motion to Supplement, the court directed appointed counsel for the plaintiff to respond to the Motions to Dismiss. (Doc. No. 88.) As noted above, he has now filed a Response to TDOC's motion. (Doc. No. 89.)[4]

On February 17, 2023, Tehum Care Services, Inc. d/b/a Corizon Health, Inc. filed a Suggestion of Bankruptcy and Notice of Automatic Stay. (Doc. No. 83.) The court entered an Order recognizing that former defendant Corizon Health, Inc. had been terminated from this case by the filing of the SAC and, therefore, that its bankruptcy filing had no bearing on this case and that the automatic stay did not apply. (Doc. No. 84.)

## III. THE CORECIVIC DEFENDANTS' PARTIAL MOTION TO DISMISS

The SAC, besides stating claims against CoreCivic and Herron under § 1983 and under state law for negligence and gross negligence, purports to state claims against Herron for violation of duties imposed by Tenn. Code Ann. §§ 41-21-204 and 41-1-103 and against CoreCivic for violation of Tenn. Code Ann. §§ 41-1-408, 41-2-109 and 41-21-204, which the court construes as negligence *per se* claims. CoreCivic and Herron seek dismissal of the claims brought under these state statutes on the grounds that they do not create or authorize a private cause of action.

---

[4] As discussed below, there appears to be no legitimate legal or factual basis counsel for the plaintiff could have raised in opposition to the other defendants' Motions to Dismiss.

Section 41-1-103 requires individuals employed to "control and manage the penitentiary for the state" to take an oath swearing or affirming that they will faithfully and diligently execute the laws and regulations prescribed for their office. *Id.* § 41-1-103(a). Violation of the oath may be punishable as perjury. *Id.* § 41-1-103(b). It does not, however, give rise to a private claim for relief. *Pendleton v. Mills*, 73 S.W.3d 115, 123 (Tenn. Ct. App. 2001).

Section 41-1-408 requires TDOC to "provide adequate medical care, including twenty-four-hour emergency care, at all prison facilities." In other words, it imposes a duty on TDOC, not on individuals or entities that contract with TDOC. It does not create a private cause of action, particularly not one against CoreCivic or Herron individually.

Tenn. Code Ann. § 41-2-109 imposes a duty on "superintendents" to, among other things, ensure that prisoners in their custody receive "proper medicine and medical treatment" when sick. The term "superintendent," however, refers to superintendents of county workhouses. *See* Tenn. Code Ann. §§ 42-1-101, 42-1-107. The plaintiff's claims arise from his incarceration at HCCF, which is not a county workhouse. This provision does not impose duties on, or give rise to a cause of action against, CoreCivic.

Finally, Section 41-21-204 creates a duty on the part of the state, as well as the medical directors and physicians employed by the state, to provide adequate medical and mental health care to inmates in state custody. *See Keys v. Hamilton Cty.*, No. 1:08-CV-204, 2010 WL 1408360, at *2 (E.D. Tenn. Apr. 2, 2010) (citing Tenn. Code Ann. § 41-21-204(b) in support of the proposition that "[o]fficials have a duty to provide inmates with medical treatment if they are ill"). This statute potentially creates a duty, for purposes of a negligence claim. *See, e.g.*, *id.* ("As Plaintiff was being detained after his arrest, the Court finds he was an 'inmate' under [§ 41-21-204] and [defendant Hamilton County's] employees had a duty to provide medical treatment"). It

does not, however, on its face, create a private cause of action against the state's employees (or contractors).

The court, therefore, will dismiss the plaintiff's claims that are based solely on alleged violations of these state statutes. As noted above, however, the SAC may be construed as asserting claims for negligence and gross negligence under Tennessee common law, which CoreCivic and Herron have not sought to dismiss. The viability of such common law claims does not necessarily depend on the applicability of any particular state statute. The dismissal of the statutory claims, therefore, does not affect the plaintiff's negligence and gross negligence claims, which remain pending.

## IV.    THE COMMISSIONER'S MOTION TO DISMISS

The SAC alleges that the State of Tennessee contracts with Centurion to provide healthcare services to inmates in TDOC custody. (SAC ¶ 3.) The claim against the Commissioner in his official capacity is based on the allegations that TDOC "allow[s] Centurion . . . to train and direct their subordinate staff members to disallow medical treatment to state prisoners," specifically through the implementation of a "sick-call procedure" that "prohibits treatment of more than one ailment per sick call request, per diem, without exception." (SAC ¶ 66.) The plaintiff alleges that this "policy and procedure by Centurion," allegedly relied on by Herron to deny medical treatment to the plaintiff while he was at HCCF, "violated the plaintiff's Eighth Amendment Right against deliberate indifference to serious medical needs" and constituted a violation of the Commissioner's obligations under Tenn. Code Ann. §§ 41-1-408 and 41-21-204. (SAC ¶ 66.)[5]

_____

[5] The Commissioner argues that the individual-capacity claims must be dismissed under Rule 12(b)(6), for failure to state a claim, because the SAC does not contain allegations that, if true, would show that the Commissioner was personally involved in any decisions regarding the plaintiff's medical care. The court finds that the individual-capacity claims against the Commissioner were dismissed in the order conducting the initial review of the FAC, based on the plaintiff's failure to "allege the personal involvement of the TDOC Commissioner in the events

In support of the Motion to Dismiss, the Commissioner filed a complete copy of TDOC's contract and contract amendments with Centurion ("contract documents"), which show that TDOC contracted with Centurion to provide medical care for inmates in TDOC custody at *certain* TDOC facilities. (*See* Doc. No. 56-1, at 5–251.) The list of covered facilities identified in the contract documents includes RMSI, but it does not include HCCF. (*See id.* at 42, 200.) The Commissioner asserts that the official-capacity claims in the SAC must be dismissed, because the plaintiff does not seek prospective injunctive relief for any ongoing violation of his constitutional rights. Rather, he alleges that the sick call policy on which his deliberate indifference claim is based was implemented at HCCF to deny him necessary care at HCCF; he does not allege that it has been used to deny him medical care at RMSI. The Commissioner also asserts that the plaintiff cannot establish that TDOC was ever in a contract with Centurion to provide medical care *at HCCF*. The Commissioner seeks dismissal of the official-capacity claim against him based on Rule 12(b)(6) and, alternatively under Rule 12(b)(1), for lack of jurisdiction based on mootness and/or lack of standing.

As the court explained when reviewing the FAC, a suit against a state official in his official capacity is equivalent to a suit against the state itself, but the State of Tennessee is entitled to absolute sovereign immunity unless some exception to immunity applies. There are only three possible exceptions to sovereign immunity: (1) the state has waived its immunity and consented to be sued in federal court; (2) Congress validly abrogated sovereign immunity through its enforcement powers pursuant to the Fourteenth Amendment to the United States Constitution; or (3) the plaintiff sues state officials in their official capacities seeking only prospective injunctive

set forth in the complaint." (Doc. No. 13, at 17.) The SAC does not contain new factual allegations that would warrant reinstating the individual capacity claims against the Commissioner. To the extent the SAC is reasserting those claims, they are subject to dismissal.

relief to end a continuing violation of federal law. (Doc. No. 13, at 15 (citations omitted).) The first two exceptions do not apply here (*id.*), so the question is whether the third exception, under *Ex Parte Young*, 209 U.S. 123 (1908), might.

It does not. The SAC is entirely focused on events that took place at HCCF through March 2022. It does not contain any allegations that the plaintiff suffered deliberate indifference to his serious medical needs after his transfer to RMSI on March 30, 2022, even though the Motion to Amend the First Amended Complaint and proposed SAC were filed on October 20, 2022, almost seven months after the transfer. Under "Relief Requested," the SAC seeks a *declaration* that the policy allegedly adopted by TDOC—barring state prisoners from "seek[ing] medical treatment for more than one ailment per diem"—violates the Eighth Amendment. (*See* Doc. No. 50, at 17.) It also demands compensatory and punitive damages from each defendant for past violations of the plaintiff's constitutional rights. (*Id.*) The plaintiff does not, however, seek an *injunction* prospectively barring the continued application of the allegedly unconstitutional policy, nor does he allege that the policy has continued to impede his access to medical care following his transfer to RMSI.[6]

The plaintiff's Response to the Commissioner's Motion to Dismiss asks the court to "focus on the plausibility of the facts alleged" rather than the form of relief sought. (Doc. No. 89, at 3.) He argues that, because the plaintiff might be transferred back to HCCF, he has a viable claim for

---

[6] To the contrary, in fact. Although the plaintiff's Motion to File Supplemental Pleading (Doc. No. 63) has been denied, it is nonetheless notable that the plaintiff's new allegations in the proposed Supplemental Complaint concern a single event that took place on October 24, 2022, just after the plaintiff filed the Motion to Amend First Amended Complaint (and, again, almost seven months after the plaintiff's transfer to RMSI), and they do not relate to the provision of medical care, *per se*. (*See* Doc. No. 63-3.) In fact, the plaintiff expressly states that he is hopeful that, at RMSI, he will "get his appointments scheduled without having to get the court involved" and further alleges that medical personnel at RMSI put in "a lot of work" to ensure that he was seen by necessary specialists and promptly scheduled for surgery. (*Id.* ¶¶ 8, 34.)

prospective injunctive relief. As set forth above, however, the plaintiff does not request prospective injunctive relief and, instead, focuses on past injuries. Moreover, even if he were transferred back to HCCF, the plaintiff would not have an ongoing claim against TDOC related to the past treatment of his medical issues while he was at HCCF.[7]

"Retroactive relief is barred by the Eleventh Amendment." *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). The SAC fails to state a claim against the Commissioner in his official capacity for prospective injunctive relief to "end a continuing violation of federal law." *Id.* By his own admission, the plaintiff is receiving medical treatment for his eyes, and he does not seek prospective injunctive relief from the Commissioner. The official-capacity claim against the Commissioner, therefore, is subject to dismissal on the grounds of sovereign immunity.

## V.     CENTURION'S MOTION TO DISMISS

The SAC substitutes Centurion for Corizon and alleges that Centurion is responsible for the constitutionally inadequate health care the plaintiff received while at HCCF and responsible for the policy that prohibited "treatment of more than one ailment per sick call request, per diem, without exception." (SAC ¶ 64.) The plaintiff alleges that this policy and the inadequate treatment amounted to deliberate indifference to his serious medical needs, in violation of state law and his Eighth Amendment rights.

Centurion moves for dismissal under Rule 12(b)(1), for lack of standing, and under Rule 12(b)(6), for failure to state a claim. It argue that the case must be dismissed for lack of standing, because "there is no live case or controversy as to the denial of medical care to Plaintiff since his

---

[7] Confusingly, the plaintiff also argues that he remains subject to a continuing threat of future injury based on a *CoreCivic* policy and that his claims against Herron and CoreCivic have not been rendered moot. However, the negligence claims against Herron and CoreCivic remain pending, and neither of those defendants argued that the claims against them are moot.

transfer to [RMSI]." (Doc. No. 71, at 4.) This argument is meritless. Centurion seems to believe that, like the state, it can only be sued for prospective injunctive relief to remedy ongoing violations of federal law, which is plainly not the law. The plaintiff alleges that a Centurion policy caused him damages in the past. He has standing to pursue such a claim, regardless of whether the harm is ongoing, and the court has subject-matter jurisdiction over the claim.

Whether the plaintiff states a claim against Centurion for which relief may be granted is a wholly different question. On this issue, the court finds that it may consider the Centurion-TDOC contract documents attached by the Commissioner to his motion and cross-referenced by Centurion, because the plaintiff refers to the contract in his pleading, and it is central to his claim against Centurion, which is premised upon the assertion that Centurion contracted with the State of Tennessee to provide medical care to inmates in state custody and confined at HCCF. *Accord Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted). The contract documents, however, show that Centurion never contracted with the state to provide medical care to inmates at HCCF.[8] The written instrument contradicts the plaintiff's allegations and "trumps the allegations." *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013). In addition, as Centurion argues, the plaintiff does not state any claims in the SAC related to his healthcare at RMSI, where Centurion is admittedly responsible for the provision of health services to inmates.

The court finds, in short, that the SAC fails to state a claim against Centurion for which relief may be granted, because the contract documents establish that it did not play a role in the

---

[8] The record does not reveal what entity, aside from CoreCivic itself, was responsible for providing medical care to inmates at HCCF during the plaintiff's incarceration there.

provision of health services to inmates at HCCF, and the plaintiff does not allege that a Centurion policy has caused him to experience deliberate indifference to his medical needs at RMSI.

## VI.   CONCLUSION

For the reasons set forth above, the defendants' motions (Doc. Nos. 51, 53, 70) will be granted. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge